UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                                               Chapter 7

    Maria Aiolova,                                                       Case No. 11-10503 (BRL)

                       Debtor.
------------------------------------------------------------x

APPEARANCES:

THE LAW FIRM OF TESE & MILNER
One Minetta Lane
New York, New York 10012
Telephone:    (212) 475-3673
Facsimile:    (212) 598-5844
<u>By</u>:    Michael M. Milner
       Alexander Statsky

*Attorneys for the Chapter 7 Trustee, Angela Tese-Milner*

Clifford Jackman
P.O. Box 395
Knickerbocker Station
New York, New York 10004

*Pro Se*

## BENCH MEMORANDUM SUSTAINING THE CHAPTER 7 TRUSTEE'S OBJECTION TO CLAIM NUMBER 4 FILED BY CLIFFORD JACKMAN

      Before the Court is the objection (the "Objection") of Angela Tese-Milner (the "Trustee"), Chapter 7 trustee for the estate of Maria Aiolova (the "Debtor" or "Aiolova"), to proof of claim number 4 (the "Claim") filed by Clifford Jackman ("Jackman") asserting an unsecured claim of $434,907 on account of mortgage payments and other expenses made in connection with property located at 1565 Sag Harbor Bridgehampton Highway, Sag Harbor, New York (the "Property"). The Trustee argues that the Claim should be expunged because it, *inter alia*, does not state an indebtedness owed by the estate and is disproved by Jackman's

affidavits and evidentiary submissions to the Court. For the reasons set forth below and at the hearing, the Trustee's Objection is SUSTAINED

## BACKGROUND

Jackman is no stranger to this Court. Now representing himself *pro se*, Jackman has been represented by several different attorneys throughout this bankruptcy case. In fact, a disagreement between Jackman and one of his former attorneys has engendered a last minute exchange of documents concerning the Objection, none of which are relevant to the determination of the legal issues currently before the Court, and which focus on disagreements of litigation strategies among erstwhile counsel and Jackman.

The Court assumes familiarity with the facts as described in its prior opinion, *Jackman v. Tese-Milner (In re Aiolova)*, 496 B.R. 123 (Bankr. S.D.N.Y. 2013), and briefly describes the facts essential to the instant matter.[1]

Jackman purchased the Property in 2000. *See* Am. Compl., ¶ 11; June Aff., ¶ 1. Jackman and Aiolova began a personal relationship in June of 2001, and began living together on the Property a year later. *See* Am. Compl., ¶¶ 12, 16. Beginning in May 2004, Jackman and Aiolova jointly invested in the acquisition and development of residential properties. *See* Am. Compl., ¶¶ 13–15; June Aff., ¶ 2. In furtherance of their joint investments, Jackman and Aiolova agreed that Aiolova would purchase the Property from Jackman and obtain mortgage financing from a bank in order to acquire and develop other properties. *See* Am. Compl., ¶ 23; June Aff., ¶ 3. Pursuant to a deed dated October 7, 2004, and in consideration for $675,000, Jackman

---

[1] The essential facts are largely set forth in several pleadings and papers filed by Jackman in the instant bankruptcy case, including the Reply to Trustee's Objection to Claim No.4 (Dkt. No 121) [hereinafter the "Jackman Reply"], the Opposition to Trustee's Motion for Creditor Creditor, Clifford T. Jackman, Jr, to Vacate Bridgehampton-Sag Harbour Property, (Dkt. No. 88) [hereinafter the "June Aff."], the Amended Complaint against Angela Tese-Milner, Adv. Pro. No 12-02073 (Dkt. No. 9) [hereinafter the "Am. Compl."], and the Affidavit of Clifford Jackman in Opposition To Trustee's Motion for Summary Judgment, Adv. Pro. No 12-02073 (Dkt. No. 32) [hereinafter the "July Aff."].

2

conveyed the Property to Aiolova. *See* July Aff., ¶ 12. Jackman was responsible for real estate taxes and the payments on the mortgage that had been taken out in Aiolova's name. *See* June Aff., ¶ 5. As part of their business arrangement, Jackman and Aiolava agreed to develop the Property, but continued to reside together at the Property during its renovation. *See* Jackman Reply, p. 3. In November 2006, the personal relationship between Jackman and Aiolova ended. *See* Am. Compl., ¶ 35; July Aff., ¶ 19. Shortly thereafter, Aiolova vacated the Property, and the parties agreed that Jackman would continue to reside on the Property and pay the mortgage and other expenses associated with the Property. *See* Jackman Reply, p. 3. The parties also agreed that Jackman would complete the construction so that the Property could be sold. *See id*. Jackman continued to reside on the Property until he was ejected by order of this Court in August 2012. *See* Order signed on 6/19/2012 Directing Vacatur Of 1565 Sag Harbor Bridgehampton Turnpike, Sag Harbor, New York (Dkt. No. 93).

On June 27, 2011, Jackman filed the Claim, asserting a claim of $434,907.00 on account of mortgage payments and other expenses made in connection with the Property. Specifically, Jackman seeks reimbursement for, *inter alia*, (1) expenses incurred by Jackman when he purchased the Property in 2000 (the "Purchase Expenses"); (2) mortgage payments made by Jackman since 2007 (the "Mortgage Expenses"); (3) living expenses in connection with Jackman's sole habitation of the Property from 2007 to 2010, such as landscaping, water, and electricity charges (the "Living Expenses); (4) construction costs incurred while renovating the Property (the "Construction Costs"); and (5) $44,852.00 for money paid to Aiolova in 2007 to buy her out of the property.

In addition to filing the Claim, Jackman also filed a complaint (as amended, the "Amended Complaint"), which sought declaratory judgment that he was the proper legal and

equitable owner of the Property. *See* Am. Compl.  By Memorandum Decision and Order, dated August 1, 2013, the Court granted the Trustee's motion for summary judgment (the "Summary Judgment Motion") and dismissed the Amended Complaint with prejudice. *See In re Aiolova*, 496 B.R. at 134.

## DISCUSSION

Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim." 11 U.S.C. § 501(a).  Section 502(a) of the Bankruptcy Code, in turn, provides that a party in interest can object to a proof of claim. 11 U.S.C. § 502(a).  The burden of proof throughout the claims adjudication process rests on different parties at different times.  *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).  Initially, the claimant must allege facts sufficient to support the claim.  If the averments in a filed claim meet this standard of sufficiency, it is "prima facie" valid. *See id.*; *see also* Fed. R. Bankr. P. 3001(f).  The burden of going forward then shifts to the party objecting to the claim, who must provide evidence to show that the proof of claim should not be allowed. *In re MF Global Holdings Ltd.*, Nos. 11–15059, 11–02790, 2012 WL 5499847, at *3 (Bankr. S.D.N.Y. Nov. 13, 2012).  In other words, the objecting party must come forward with evidence of equal or greater value than that provided by the creditor in conjunction with the proof of claim.  *See In re Allegheny Intern., Inc.*, 954 F.2d at 173. ("It is often said that the objector must produce evidence equal in force to the prima facie case."); *see also In re Williams*, No. 92-50546, 1994 WL 329328, at *2 (Bankr. S.D. Ga. Mar. 30, 1994) ("To rebut the statutory presumption, the objector must show facts sufficient to demonstrate that an actual dispute exists regarding the validity or amount of the claim.).  If the objecting party satisfies its burden, the burden shifts back to the claimant to support its proof of claim by proving by a preponderance of the evidence that under applicable law the claim should be allowed. *See In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009).  The ultimate burden of persuasion

4

rests with the claimant. *See In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000) ("[O]nce the presumption is overcome, the ultimate burden to establish the validity of a claim is placed on the creditor.") (citation omitted).

Bankruptcy Rule 3001 requires a claimant to attach supporting documentation to a proof of claim. Specifically, Rule 3001(c) provides that "[w]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. *See* Fed. R. Bankr. P. 3001(c). In addition, Item 7 on Official Bankruptcy Form B 10 sets forth the content and format for proofs of claim and instructs creditors to "[a]ttach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary."

If a proof of claim is not supported by the requisite documentation, it is not presumed to be *prima facie* valid. *See In re Minbatiwalla*, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010). If the presumption does not arise, the debtor need only object to the claim pursuant to the applicable rules. *See In re Tran*, 369 B.R. 312, 318 (S.D. Tex. 2007). The objection, however, must be based on some good faith ground. An assertion that the proof of claim is not supported by documentation is not sufficient, by itself, to support an objection to claim. *In re Falwell*, 434 B.R. 779, 783 (Bankr. W.D. Va. 2009). In certain circumstances, however, "claims can be disallowed for failure to support the claim with sufficient evidence because absent documentation, the proof of claim is not sufficient for the objector to concede the validity of a claim." *In re Residential Capital, LLC*, No. 12-12020, 2013 WL 5524728, at *4 (Bankr. S.D.N.Y. Oct. 4, 2013) (internal quotations and citations omitted); *see* In re Falwell, 434 B.R. 779, 790 (Bankr. W.D. Va. 2009) ("If the information provided in the proof of claim, however, is

5

not sufficient to allow the objecting party to identify the creditor or the debt, then that may form the basis for an objection to claim.").

Here, Jackman has not submitted any documentation to support his Claim, and therefore has not met his prima facie burden. Moreover, even assuming that the Claim is entitled to *prima facie* validity, the Trustee has met her burden of going forward by highlighting the inconsistencies between the Claim and Jackman's prior sworn affidavits and evidentiary submissions before this Court.

First, the Claim seeks repayment of Purchase Expenses incurred by Jackman in 2000. However, given that Jackman admitted that he began dating Aiolova in 2001 and began a business relationship with her in 2004, *see* Am. Compl. ¶¶ 12, 15, Jackman has shown no basis for charging these costs to the estate.

Second, the Claim also seeks $44,852.00 for money paid to Aiolova "to buy her out of the property." However, Jackman previously stated that the money was repaid to the Debtor "to reimburse her for monies she had spent on the Sag Harbor Property for my benefit," *see* July Aff., ¶ 20, and again has shown no basis for charging these costs to the estate.

Third, the Claim further charges the estate for the Construction Costs, the Mortgage Expenses, and the Living Expenses. However, all of these costs stem from the period when Jackman was in sole possession of the Property, and based on Jackman's admissions and submissions to the Court, he was obligated pay all costs and expenses associated with Property. Indeed, Jackman concedes that after Aiolova vacated the Property, the parties agreed "that [Jackman] would continue to pay the mortgage, other expenses, and complete the construction so that [Jackman and the Debtor] could sell the [P]roperty." Jackman Opp., p.3. Further, as an exhibit to the Amended Complaint, Jackman attached a purported contract between him and

6

Aiolova, signed in 2006 (the "2006 Contract"). *See* Am. Compl., ex. D. The 2006 Contract states that "CJ [Jackman] is responsible for the monthly payments and any other cost associated with the [P]roperty." *Id.* No mention is made that these expenses would be reimbursed by Aiolova. Moreover, the 2006 Contract also discussed a second investment property being developed by Jackman and Aiolova, located at 244 West 4th Street, New York, New York (the "Manhattan Property"). In regards to the Manhattan Property, the 2006 Contract allocated the mortgage costs and construction expenses between Jackman and Aiolova—construction costs and mortgage expenses were to be split by the parties besides for a one year period where Aiolova would rent the Manhattan Property and pay the mortgage expenses—strongly inferring that Jackman alone was responsible for the monthly payments and other cost associated with the renovation of the Sag Harbor Property. Finally, in his Reply, Jackman essentially admitted that Aiolova did not agree to personally reimburse him for the Construction Costs, rather, he argued that the "debtor and I agreed [that the Construction Costs] would be repaid upon the sale of the property." Jackman Reply, at p.4. At best, such agreement allows Jackman to recoup his expenses from the sale of the Property. Given that Jackman's attorney conceded on the record, at the hearing held on July 31, 2013 in regards to the Summary Judgment Motion, that the mortgage amount exceeds the value of the Property and the mortgagee has a valid lien on the Property, sale of the Property would not generate a surplus above the lien. As such, even assuming that Jackman and Aiolova agreed that Jackman would be reimbursed from the sale of the Property, the Trustee Argues that such claim can be estimated at zero. *See* 11 U.S.C. § 502(c) ("There shall be estimated for purpose of allowance under this section—(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the estate.").

Jackman's concessions and the discrepancies between the Claim and Jackman's prior affidavits and evidentiary submissions before this Court concerning his business arrangements with Aiolova, highlighted above by the Trustee, are more than sufficient to rebut the *prima facie* evidence of the Claim.  As the Trustee has presented sufficient evidence to refute the allegations in the Claim, the burden of establishing the Claim's validity has shifted back to Jackman.  Yet Jackman is unable to establish the claim by the preponderance of the evidence.  Jackman offers absolutely no evidence to counter the Trustee and has neither identified nor adduced evidence demonstrating any promise or agreement by Aiolova to reimburse Jackman for expenses related to the Property.  At bottom the entirety of the Claim is both unsupported and contradicted by Jackman's prior assertions to the Court.  Accordingly, the Trustee's Objection is SUSTAINED.

## CONCLUSION

For the reasons explained above, the Trustee's Objection is SUSTAINED and the Claim is EXPUNGED in its entirety.  The Trustee is directed to submit an order consistent with this Bench Memorandum.



Dated: October 29, 2013
    New York, New York

/s/ Burton R. Lifland
_____
Burton R. Lifland
United States Bankruptcy Judge

8